IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITY OF ST. CHARLES, MISSOURI | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. **4:23-cv-01190** |
| | ) |
| UNION ELECTRIC COMPANY d/b/a | ) |
| AMEREN MISSOURI, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Union Electric Company d/b/a Ameren Missouri ("Ameren") hereby removes the Verified Petition for Temporary Restraining Order and Preliminary and Permanent Injunction (the "Verified Petition") filed by Plaintiff City of St. Charles, Missouri (the "City"), captioned *City of St. Charles, Missouri v. Union Electric Co.*, No. 2311-CC00954, filed in the Circuit Court of St. Charles County, Missouri (the "State Court Action"), pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446 and 42 U.S.C. §§ 9613 and 9621.

### Overview

1.  This action arises out of environmental remediation work conducted by the United States Environmental Protection Agency ("EPA") and Ameren at a Superfund site in St. Charles, Missouri. Because the Superfund site includes an Ameren electrical substation within its boundaries (the "Substation"), Ameren has performed investigation and remediation work under the EPA's direction and jurisdiction for more than a decade. Ameren has performed that work

1

under two Settlement Agreements and Orders on Consent issued by the EPA in 2012 and 2018, respectively, under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and pursuant to EPA-approved Work Plans.

2.  The City operates a public water supply system and is authorized to dispense water to the public pursuant to the terms of an Operating Permit (No. MO6010707) (the "MDNR Permit") issued by the Missouri Department of Natural Resources ("MDNR") and operates a water treatment plant in accordance with requirements set forth in the MDNR Permit and Missouri's Safe Drinking Water Law and regulations.  The MDNR Permit identifies seven supply wells that are connected to the treatment plant, including City Well No. 4 ("CW-4"), which is nearly sixty-years old.  CW-4 is located on Huster Road adjacent to the Substation and has been inactive since 2005.

3.  On August 7, 2023, however, the City activated CW-4 and began pumping tens of millions of gallons of groundwater that it hard-piped to a nearby sewer drain, not to the treatment plant for supply purposes.  By dumping the water to the sewer rather than sending it to the water treatment plant, the City has been pumping the well at an exceptionally high rate that is higher than possible under normal operating conditions.  Because the City's pumping of water into the sewer at unprecedented rates interferes with the ongoing remediation work, Ameren began to make preparations—and sought EPA approval for—drilling an extraction well at the Substation.

4.  The City apparently objects to Ameren's remediation efforts and in response, the City filed the Verified Petition, which openly seeks to usurp the EPA's exclusive jurisdiction and authority over Ameren's remediation work at the Superfund site.  The City (wrongly) suggests that Ameren must obtain City, *in addition to* EPA approval, before drilling the extraction well, even though the ordinance that the City relies upon is clearly inapplicable on its face because it applies

to and prohibits installation of "private potable" drinking water wells rather than to a remedial, groundwater extraction well like the one that Ameren has proposed to the EPA. St. Charles City Ordinance § 400.320. Regardless of the applicability of the local ordinance, though, the City's Verified Petition directly conflicts with CERCLA § 121(e)(1).[1]

5.  The City—without notice to Ameren—sought and obtained a temporary restraining order from the Circuit Court of St. Charles County. *See* State Court Action, Pl.'s Mot. for TRO and Prelim. Inj. (the "Motion"); *id.* TRO (the "TRO"). The Motion purports to prohibit Ameren from engaging in CERCLA remediation work without the City's approval. Regardless of when and whether Ameren obtains EPA approval, the TRO enjoins Ameren from "*drilling, constructing or otherwise installing an extraction well on the Substation property*." TRO at 2 (emphasis added). Proceeding *ex parte,* the City further persuaded the State court to direct Ameren, regardless of EPA approval, to "submit plans and specifications for its proposed work to the City of St. Charles for approval" before Ameren commences the new remediation work. *Id.*

6.  On September 18, 2023, the City conceded its intent to encroach upon the EPA's authority. *See* Exhibit 1, City's Sept. 18 2023 Letter to Ameren. That encroachment drew a rebuke from the EPA, which directed the City to cease its pumping operation and "***refrain from interfering with the response action so as to allow work to proceed with EPA approval***." *See* Exhibit 2, EPA's Sept. 18, 2023 Letter to the City and Ameren (emphasis added)

7.  On September 19, 2023, Ameren likewise requested the City cease its pumping and dumping at CW-4, to dissolve the TRO, and to dismiss the State Court Action without prejudice.

---

[1] Section 121(e) of CERCLA provides that "[n]o Federal, State, or local permit shall be required for the portion of any removal or remedial action conducted entirely onsite, where such remedial action is selected and carried out in compliance with this section." 42 U.S.C. §9621(e)(1).

Under pressure from the EPA, the City has shut off CW-4, but refuses to dissolve the TRO thereby asserting it has ongoing approval authority over Ameren's remediation activities. As a result, Ameren is removing the State Court Action to this Court based on the Court's federal question and federal officer jurisdiction.

8. The Verified Petition necessarily raises a federal question because it seeks preliminary and permanent injunctive relief on the ground that Ameren cannot perform the remediation work until Ameren receives EPA approval of its workplan. Verified Petition ¶¶ 14-15(a)-(g), 26. The Verified Petition also establishes this Court's jurisdiction under the federal officer statute because the City concedes that "Ameren's clean-up efforts have been directed by USEPA." *Id.* ¶ 13. Notwithstanding federal preemption under CERCLA § 121(e)(1), the Verified Petition seeks to usurp the expertise and authority of EPA through a permanent injunction that makes Ameren's remediation work contingent on the City's *additional* regulatory "approval" of any workplan. Accordingly, this Court has subject matter jurisdiction over the City's unnecessary and unwarranted attempt to challenge the EPA's jurisdiction and authority.

### The City Abruptly Begins Pumping CW-4 at Maximum Volume

9. Ameren has performed remediation work at the Substation at the direction of EPA for more than a decade. In a filing earlier this year, the EPA acknowledged that "Ameren has cooperated in the investigation being conducted, and will continue to perform response actions at the Site under the 2018 Administrative Settlement Agreement and Order on Consent. Such work will ensure protectiveness of public health and the environment while these additional investigations and evaluations are completed." *See* Exhibit 3, *United States v. Union Electric Co.*, No. 4:22-cv-1038-JAR, Joint Motion for Stay of Proceedings; *see also* Exhibit 4 2018 Administrative Settlement Agreement and Order on Consent (the "2018 Settlement Agreement").

4

10. Earlier this year, however, the City initiated serial litigation against EPA and Ameren to disrupt the progress toward completion of Ameren's remediation work under CERCLA. *See United States v. Union Electric Co.*, No. 4:22-cv-1038-JAR; *City of St. Charles v. Union Electric Co.*, No. 4:23-cv-0846-MTS.

11. More alarming, in the past few months, the City has moved its litigation strategy beyond court filings to physical interference with EPA-approved remedial activity.

12. Specifically, CW-4 is located near Ameren's Substation. The City voluntarily ceased operation of CW-4 in 2005. In other words, for the past 18 years, CW-4 has remained idle.

13. On August 7, 2023 the City abruptly turned on CW-4 and began pumping CW-4 at rates that exceed historical usage. It is estimated that, in the last 30 days, the City has wasted more than 48 million gallons of groundwater by pumping that water directly from CW-4 into the sewer system and has done so at an alarmingly high pump rate that has disrupted Ameren's remedial efforts. This is equivalent to a 10-acre, 14-foot-deep lake.

14. The concern—shared by Ameren and the EPA—is that the City's unnecessary and reckless pumping has begun to draw contamination away from the Substation and toward CW-4, thereby expanding the contamination plume. The unprecedented pumping of CW-4 is nothing more than an improper attempt to frustrate the remedy by attempting to draw off contamination through an unrealistic and unsustainable pumping of CW-4. To achieve its bizarre goals, the City activated a well that the City had mothballed for nearly 20 years. Once reactivated, the City has pumped water from CW-4 at an excessive pumping rate for 24 hours a day, and has then dumped millions of gallons of water straight into the sewer with no beneficial or reasonable use resulting from its extraordinary pumping scheme.

## Ameren Seeks EPA Approval of an Additional Extraction Well to Counteract the City's Careless Pumping Operation

15.     To counteract the negative effects the City's pumping at CW-4 is causing on and potentially near Ameren's property, Ameren sought EPA's approval to drill an extraction well on its Substation property to offset the City's harmful and unprecedented pumping rate.  Since 2014, Ameren has operated other onsite extraction wells at the Substation at EPA's direction and without the City's interference.  This time, though, the City attempted to thwart Ameren's and EPA's efforts.

16.     Specifically, on August 29, 2023, pursuant to the 2018 Settlement Agreement, Ameren submitted its Supplement to the Monitoring Well Installation Work Plan to the EPA ("Ameren's Workplan"), which outlines Ameren's rationale for installing the additional extraction well.  A true and accurate copy of the submission is attached hereto as Exhibit 5, Ameren's Workplan.

17.     On September 6, 2023, EPA provided comments on Ameren's Workplan.  *See* Exhibit 6, EPA's Sept, 6, 2023 Letter to Ameren.

18.     The following day, September 7, 2023, EPA requested the City halt all pumping at CW-4 for several weeks to avoid further potential negative impacts to Ameren's ongoing remediation efforts.  A true and accurate copy of the correspondence is attached hereto as Exhibit 7, EPA's Sept. 7, 2023 Letter to the City.  The City did not halt its unnecessary pumping.

19.     On September 11, 2023, Ameren further explained to the EPA that it believes that the City is attempting to create an off-site plume, "which it could try to use as a misguided litigation tactic, as well as to distract attention away from all of the proactive environmental work that Ameren has achieved at" the Substation.  A true and accurate copy of the correspondence is attached hereto as Exhibit 8, Ameren's Sept. 11, 2023 Letter to the EPA.

20. In anticipation of the EPA approval's, Ameren also began staging equipment at the Substation, but Ameren did not commence any work drilling the well.

21. In response to those preparations, however, the City sent multiple correspondences, telling Ameren to cease and desist from drilling the extraction well without a City-issued permit. *See* Exhibit 9, City's Sept. 13, 2023 Letter to Ameren; *see also* Exhibit 10, City's Sept. 14, 2023 Stop Work Order Letter to Ameren.  This was the first time the City claimed it had permitting authority over wells at the Superfund site.

22. On September 14, 2023, Ameren responded to EPA's comments and submitted a revised Supplement to Monitoring Well Installation Work Plan ("Supplement to Ameren's Workplan") and again urged EPA to approve the installation of the additional extraction well in light of the City's irresponsible refusal to stop misuse of CW-4.  A true and accurate copy of the submission is attached hereto as Exhibit 11, Supplement to Ameren's Workplan.

23. Although Ameren still was not drilling the well, the City further emphasized its desire to improperly exercise jurisdiction over the site by posting "STOP WORK" notices outside the Substation and dispatching City personnel and police cars to monitor the Substation in a clear attempt to intimidate Ameren's employees and contractors.

24. On September 14, 2023, Ameren told the City's counsel in clear terms that Ameren was "awaiting final approval from EPA" before Ameren began drilling the extraction well.  A true and accurate copy of the correspondence is attached hereto as Exhibit 12, Ameren's Sept. 14, 2023 Letter to the City.

### The City Obtains an *Ex Parte* TRO From the State Court

25. As depicted above, the parties' counsel were in frequent communication in the days immediately leading up to the filing of the Verified Petition and request for the TRO.  In fact, on

the morning of September 14, 2023, opposing counsel had actively corresponded via email with Ameren's undersigned counsel. Conveniently, the City's counsel failed to mention to Ameren's counsel the fact that the City was finalizing the Verified Petition and would be seeking an *ex parte* TRO in a matter of hours.

26. Later that day, without providing prior notice to Ameren or its undersigned counsel, the City filed the Verified Petition and obtained the *ex parte* TRO from the Circuit Court of St. Charles County, Missouri. *See* Verified Petition; TRO. The TRO (presumably prepared by the City for the judge's signature) states that Ameren "has not provided the City of St. Charles with proof that it has obtained . . . approval by the U.S. Environmental Protection Agency to install an extraction well into the City aquifer." TRO at 1. As requested by the City, the TRO further orders Ameren "to submit plans and specifications for its proposed work *to the City of St. Charles for approval* before commencing any work on the extraction well." *Id.* at 2 (emphasis added)

27. After obtaining the TRO, the City did not immediately transmit the TRO to Ameren despite the fact that Ameren was the recipient of the injunctive relief. Instead, despite both parties' counsel being in contact throughout the day, Ameren and its undersigned counsel first learned of the Verified Petition and TRO in the evening of September 14, 2023 from a media inquiry to Ameren's communications department responding to a press release issued by the City. *See* Exhibit 13, Mark Schlinkmann, *St. Charles goes to court to bar Ameren from drilling new well near substation*, ST. LOUIS POST-DISPATCH, Sept. 15, 2023, https://www.stltoday.com/news/local/stcharles/st-charles-goes-to-court-to-bar-ameren-from-drilling-new-well-near-substation/article_293e4d4e-5350-11ee-84d3-6707bffdae69.html (last visited Sept. 21, 2023); Exhibit 14, *Press Release*, CITY OF ST. CHARLES, September 14, 2023.

28. The TRO, as requested by the City, shines a direct light on the City's intent: to

disable EPA from exercising its exclusive authority pursuant to the 2018 Settlement Agreement and CERCLA by seizing for itself final "approval" over Ameren's remedial efforts at the Substation.

**Under Pressure from the EPA, the City's Partially Retreats From the Improper TRO**

29. Since obtaining the TRO, the City has conceded that it led the State Court into error. In correspondence dated September 18, 2023, the City acknowledged that Ameren had told it on September 14, 2023 that Ameren was not going to install the extraction well without EPA approval. Exhibit 1, City's Sept. 18, 2023 Letter to Ameren. More importantly, the City admitted that "[w]e do not dispute the potential applicability of CERCLA 121(e)(1) to EPA approved remedial work." *Id.* (emphasis removed). The City further conceded that, upon EPA approval, the City's local permit ordinance would be preempted by CERCLA. *Id.* Despite these concessions, the City has not sought to correct the *ex parte* TRO it asked the state court judge to sign to reflect that EPA's forthcoming approval will supersede the TRO.

30. In a letter dated September 18, EPA issued "Findings and Required Work" that told the City to turn off CW-4 "as soon as possible" and "refrain from interfering with the response action so as to allow work to proceed with EPA approval." Exhibit 2.

31. EPA further informed the City that EPA "*objects to potential interference by the city in a CERCLA response action.*" *Id*. (emphasis added). EPA stated: "Once the EPA approves the work plan, Ameren must proceed with the EPA-approved CERCLA response action without interference." EPA directed the City to "*[t]ake whatever action necessary to allow work to proceed with EPA approval, so as not to interfere in the response action.*" EPA warned that "*[t]he continued pumping of CW-4 deters from*" established objectives under CERCLA "*and may exacerbate contamination at the site, exposing the city to liability.*" *Id.* (emphasis added)

9

32. In a letter dated September 19, 2023, Ameren echoed EPA's request for the City to stop all pumping at CW-4, as well as to dissolve the TRO and dismiss the Verified Petition. Exhibit 15, Ameren's Sept. 19, 2023 Letter to the City. The City responded on September 21, 2023, and refused to dissolve the TRO. *See* Exhibit 17, City's Sept. 21, 2023 Letter to Ameren.

33. The City has spent the past several weeks engaged in an improper and misplaced exercise of its police power while fully aware of EPA's exclusive authority over Ameren's remedial actions under CERCLA and the 2018 Settlement Agreement. Yet, the City was not and is not satisfied with temporarily blocking Ameren from drilling the additional extraction well. Instead, the City seeks to disable EPA's authority to approve Ameren's remedial actions and claim that authority for itself.

**GROUNDS FOR REMOVAL**

**I. The Court Has Jurisdiction Under 28 U.S.C. § 1331 and 42 U.S.C. §§ 9613 and 9621 Because Plaintiffs' Claims Arise Under CERCLA.**

34. Under 28 U.S.C. § 1441(a), a civil action filed in state court may be removed to a federal district court if the district court has original jurisdiction over the action. By statute, this Court has original jurisdiction because: (a) Plaintiff's claim arise under the laws of the United States, 28 U.S.C. § 1331; and (b) Plaintiff alleges a controversy arising under CERCLA, 42 U.S.C. §§ 9613 and 9621.

35. A defendant properly removes state law claims based on a "substantial federal question" where (1) the right to relief under state law depends on the resolution of a substantial, disputed federal question, and (2) the exercise of jurisdiction will not disrupt the balance between federal and state jurisdiction adopted by Congress. *Pet Quarters Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (citing *Grable & Sons Metal Prods., Inc. v. Barue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).

36. Ameren's 2018 Settlement Agreement with the EPA is a "legally binding administrative order[]" under federal law, issued under the auspices of CERCLA. *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1355 (2020) (citing 42 U.S.C. §§ 9609(a)(1)(E), 9622(*l*)). Ameren's remediation work at the Substation, including the work described in its Supplement to Ameren's Workplan, is being conducted pursuant to that agreement and CERCLA.

37. The 2018 Settlement Agreement requires Ameren to obtain EPA approval prior to executing this additional remediation work. Exhibit. 4, 2018 Settlement Agreement ¶¶ 32(e), 36, 39.

38. Ameren, to obtain the required EPA approval recognized by the City, submitted its workplan to the EPA for review and approval; received comments from the EPA; and addressed the EPA's comments in a supplement. Ameren is currently awaiting EPA's final approval.

39. The City's Verified Petition seeks preliminary and permanent injunctive relief based on the absence of EPA's forthcoming final approval. The City pleads that "USEPA did not approve this work," fully recognizing that the EPA has authority over the work being conducted at the site pursuant to CERCLA and the 2018 Settlement Agreement. Verified Petition ¶ 15. Furthermore, one of the grounds for the TRO is that Ameren "has not provided the City of St. Charles with proof that it has obtained . . . approval by the U.S. Environmental Protection Agency to install an extraction well into the City aquifer." TRO at 1. Therefore, the merits of Plaintiff's Motion and this Court's analysis of its claim rely on interpretation of federal law and the authority of the EPA.

40. The Court's exercise of jurisdiction will not upset the balance between state and federal courts. CERCLA specifically provides that federal law preempts the local approvals that the City seeks to impose. 42 U.S.C. § 9621(e)(1). The City's improper use of *ex parte* proceedings

in state court to obtain the TRO further emphasizes the necessity of federal court intervention to vindicate congressional intent under CERCLA.

## II. The Court Also Has Jurisdiction Under the Federal Officer Statute, 28 U.S.C. § 1442(a)(1).

41. Section 1442(a)(1) allows for removal of any civil action against "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office." 28 U.S.C. § 1442(a)(1). There are four elements to the federal officer statute: (1) the defendant is a "person" within the meaning of the statute; (2) the defendant has acted under the direction of a federal officer; (3) there was a causal connection between the defendant's actions and the official authority; and (4) the defendant has a colorable federal defense to the plaintiff's claims." *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1538 (2021).

### A. Ameren Is a "Person" That Has Acted Under the Direction of a Federal Officer.

42. As a corporation, Ameren is a "person" under 28 U.S.C. § 1442(a)(1).

43. Section 1442(a)(1) requires the private party to be "authorized to act with or for federal officers or agents in affirmatively executing duties under federal law." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007). *Watson* defined "acting under" as a private person who is under the "subjection, guidance, or control" of a federal officer, which "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* at 151-52 .

44. "As its name implies, CERCLA is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." *Key Tronic*, 511 U.S. at 814. For purposes of this dispute, the President has delegated the relevant responsibilities to the EPA Administrator. *Atl. Richfield*, 140 S. Ct. at 1346 n.1. "Prior to selecting a cleanup plan, EPA conducts (or orders a private party to conduct) a remedial

12

investigation and feasibility study to assess the contamination and evaluate cleanup options." *Id.* at 1346 (citing 40 C.F.R. § 300.430); *see Greene v. Citigroup, Inc.*, 215 F.3d 1336 (10th Cir. 2000) (a defendant who implements a remedy selected by EPA, pursuant to CERCLA, is acting under the direction of a federal officer).

45. Here, the City pleads, as it must, that "Ameren's clean up efforts have been directed by USEPA." Verified Petition ¶ 13. Ameren has been working under the direction, guidance, control, and oversight of the EPA since the execution of the 2012 Settlement Agreement, including by getting the EPA's approval of all of its remedial actions taken at the Substation. That holds true with respect to the current remedial actions under the 2018 Settlement Agreement, which requires EPA approval.

  **B.**  **There Is a Causal Connection Between Plaintiffs' Claims and the EPA's Official Authority.**

46. The City's claim directly undermines the EPA's official authority under CERCLA The City seeks relief on the basis that EPA has not provided final approval of Ameren's proposed workplan. Verified Petition ¶¶ 14-15.

  **C.**  **Ameren Has a Colorable Federal Defense Based on CERCLA Preemption.**

47. Ameren has a colorable (or, rather, meritorious) defense based on CERCLA preemption.

48. Under CERCLA, "no federal, state, or local permit shall be required for the portion of any removal or remedial action conducted entirely onsite, where such remedial action is selected and carried out in compliance with this section." 42 U.S.C. § 9621(e)(1); *see also United States v. City & County of Denver*, 100 F.3d 1509, 1512 (10th Cir. 1996) (preempting zoning ordinance that "stands as an obstacle to the objectives of CERCLA"); Exhibit. 4, 2018 Settlement Agreement ¶ 57. In other words, EPA-approved onsite work does not have to comply with local zoning and

permitting requirements like those cited by the City in its Verified Petition.

### III. Removal Is Timely, and This Court Is the Proper Venue.

49. Ameren timely removes this action under 28 U.S.C. § 1446(b)(1). The City provided Ameren notice on September 15, 2023, and Ameren is filing this notice of removal within 30 days after service.

50. Venue is proper in the Eastern District of Missouri, Eastern Division because the State Court Action is pending in the Circuit Court of St. Charles County, Missouri. *See* 28 U.S.C. § 1441(a); L.R. 2.07.

51. Pursuant to 28 U.S.C. § 1446(a) and L.R. 2.03, a copy of the Verified Petition and all other pleadings and papers filed in the State Court, as well as the docket sheet, are attached hereto as Exhibit 18.

52. Ameren will promptly file a true and correct copy of this Notice of Removal in the Circuit Court of St. Charles County and serve written notice of the same upon all parties to the action, as required by 28 U.S.C. § 1446(d).

53. Ameren reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, Defendant Union Electric Company d/b/a Ameren Missouri respectfully removes the State Court Action from the Circuit Court of St. Charles, Missouri to the United States District Court for the Eastern District of Missouri, Eastern Division, so that this Court may assume jurisdiction over the cause as provided by law to the exclusion of any further proceedings in the state court.

Dated:  September 21, 2023                                        Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By:    /s/ *Mark B. Leadlove*

| | |
|---|---|
| Mark B. Leadlove | MO #33205 |
| Christopher J. Schmidt | MO #53362 |
| Mark Lenihan | MO #75199 |
| Brittainy Cavender | MO #72275 |

One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
mbleadlove@bclplaw.com

**BARNES & THORNBURG LLP**

Joseph F. Madonia (pro hac vice pending)
1 North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: (312) 357-1313
joseph.madonia@btlaw.com

*ATTORNEYS FOR DEFENDANT UNION ELECTRIC COMPANY D/B/A AMEREN MISSOURI*

15

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on September 21, 2023, a true and correct copy of the foregoing was served via email and U.S. Mail, postage prepaid, upon the following:

Portia C. Kayser
Harris Dowell Fisher & Young, L.C.
15400 South Outer Forty
Suite 202
Chesterfield, MO 63017
pkayser@harrisdowell.com

**Attorney for Plaintiff**

By: */s/ Mark B. Leadlove*
      **Attorney for Defendant**